# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JENNIFER BRESSNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-cv-1309 |
| ) | |
| CATERPILLAR, INC., ) | |
| ) | |
| Defendant. ) | |

### O R D E R

This matter is before the Court on the Motion for Summary Judgment filed on December 21, 2007 [Doc. 15]. For the reasons that follow, the Motion is GRANTED.

#### BACKGROUND

Plaintiff, Jennifer Bressner, alleges that Defendant, Caterpillar, Inc., discriminated against her on account of her gender when it terminated her employment on March 23, 2005.

The following facts are undisputed except as specifically indicated.[1] Bressner started working for Caterpillar in July

---

[1] In her separate response to Defendant's statement of undisputed material facts [Doc. 17], Plaintiff lists those material facts that are undisputed, outlines her disputes with other material facts, and indicates which facts are immaterial [Doc. 17]. However, there are a number of facts listed in Defendant's statement of material facts that are neither specifically undisputed, disputed, or identified as immaterial by Plaintiff. These facts include those listed in Defendant's paragraphs 8, 9, 10, and 11 [Doc. 15, pp. 4-6]. The Court assumes that these paragraphs are undisputed because Plaintiff has not specifically indicated a dispute with the facts contained therein. See Local

2004 as a "Supplemental Employee."  Bressner was a union member and subject to a collective bargaining agreement that indicated that she was hired on a "temporary but indefinite basis." Plaintiff was hired by Wes Knepp and was an assembly and test production worker handling fuel injectors.  She initially reported to Clyde Zelmer and later reported to Sheila Diemer and Lynn Swearingen, both women.  Diemer believed that Bressner's work performance was unsatisfactory.  She believed that Bressner was not staying in her work area, required too much assistance, was late, and had excessive unexcused absences.  Diemer also received complaints from Bressner's co-workers including Lori Cox, Deb Kelly, and Brian Atkins. Kelly indicated that Bressner's work habits were lazy and that she created more work for her colleagues.

Diemer discussed with Bressner her work performance and the areas with which Diemer was unsatisfied.  Plaintiff's other supervisor, Swearingen, also discussed Bressner's work performance, counseling her against socializing excessively, telling her to take initiative, and indicating that her attendance needed improvement (Swearingen was responsible for forwarding Bressner's time-off approval slips to management).

---

Rule 7.1(D)(2)(b)(2).  There are also a number of statements made in Plaintiff's response for which there is no citation to the record.  This Court will only consider evidence for which there is support in the record.

On March 17, 2005, Kelly and Bressner had a verbal altercation which resulted in a complaint to Diemer from Atkins. Diemer called both women into her office and Bressner became upset that her work performance was being discussed in front of another employee. After the meeting, Diemer went to Bressner's work station to discuss the matter further and Bressner was absent. Diemer summarized the events in a memo to Knepp.

Knepp indicates in his declaration that he reviewed Bressner's attendance record, the memo from Diemer, and Diemer's assessment of Bressner's work performance. (Wes Knepp Dec. ¶¶ 5-6). He then indicates that he made the decision to terminate her employment on March 23, 2005, because of her unsatisfactory employment and her attendance issues. (Knepp Dec. ¶ 7). In disputing these facts, Plaintiff states, without the benefit of citation to the record, that "Knepp had nothing to do with the decision to recommend Bressner's termination" [Doc. 17, p. 1]. Knepp's declaration reveals that he *made* the decision; there is no indication in the record that Knepp merely *recommended* the decision to someone else. Plaintiff also states, again without the benefit of citation to the record, that Knepp "cannot be considered the final decision maker for any Caterpillar employee for which he is not in the line of supervision" [Doc. 17, pp. 1-2]. As Plaintiff cites to no evidence to support these "facts,"

3

they will not be considered by the Court.  See Local Rule 7.1(D)(2)(b)(4).

After Bressner's termination, the Union filed a grievance. During the grievance procedure, Knepp became aware that his initial assessment of Bressner's unexcused absences was erroneous because when he decided to terminate Bressner's employ, Caterpillar's electronic system had not "captured" her approved leave slips.  Thus, a number of Bressner's absences were approved although the system listed them as unexcused.  In light of this discovery, Knepp and the union agreed to settle the grievance.  The terms of the settlement are disputed – with respect to the return-to-work arrangement – however, it appears that it is undisputed that Plaintiff received back wages from the time of her termination to May 20, 2005.  It is also undisputed that Bressner had no interest in returning to Caterpillar and is currently self-employed.

Bressner believes that the only person at Caterpillar who has a discriminatory animus against her is Diemer, a former friend.[2]  Bressner believes that their relationship deteriorated when Diemer failed to get a promotion from Bressner's brother, Jim Gadberry, a superintendent at Caterpillar.  Bressner further believes that Diemer wanted to get rid of her because her brother did not give Diemer a promotion.

---

[2] Plaintiff believes that this fact is immaterial.

4

**STANDARD**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial."  Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24.  "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."  Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## DISCUSSION

In order to withstand summary judgment in this Title VII case and show discriminatory intent in firing, Plaintiff may proceed under the direct method or she may proceed under the familiar, burden-shifting, indirect method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Rudin v. Lincoln Land Community College, 420 F.3d 712, 719 (7th Cir. 2005).

Under the direct method, Plaintiff must present direct or circumstantial evidence of discriminatory intent – generally evidence that would constitute an admission of discriminatory animus.  See Phelan v. Cook County, 463 F.3d 773, 780 (7th Cir. 2006); Isbell v. Allstate Ins. Co., 418 F.3d 788, 794 (7th Cir. 2005).  Direct evidence would be a sort of "smoking gun"; alternatively or in addition, Plaintiff may present "a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker."  Id. (citations and quotation marks omitted); See also Brewer v. Board of Trustees of University of Illinois, 479 F.3d 908, 915 (7th Cir. 2007).  Plaintiff has presented evidence under the direct method that she believes would show that she was discriminated against on account of her gender.

Plaintiff's evidence consists of a statement made by Diemer 3 to 6 months prior to Plaintiff's termination.  According to Colleen Weber, an employee of Caterpillar, in the Winter or Fall of 2004, Diemer approached her and two others, Patty Hoover and Bridget Blankenbeckler, in the break room.  (Colleen Weber Dep. pp. 14-15).  Weber reported that:

> A.  Sheila [Diemer] had walked up and started speaking to us all at the table and saying that she has about had it with Jennifer [Bressner].
>     And Bridget had looked at me and she says, you know, it's that bitch, Jennifer Oderra.[3]  And I said,

---

[3] Plaintiff's maiden name.

7

> Oh. And she says, I'm tired of bending over backwards and kissing her ass. She said she was going to walk that fucking bitch out even if she had to pull her out by her hair.
>
> Q. Did anybody else say anything during the course of time she was saying this?
>
> A. They just laughed.
>
> Q. Was Ms. Deemer [sic] angry, or how did you observe her when she was talking.
>
> A. She was angry. She was angry.
>
> Q. And how could you tell she was angry?
>
> A. The tone of voice and her motions, her actions.
>
> (Weber Dep. pp. 14-15).

Plaintiff argues that this statement shows a gender bias and that, because Diemer influenced the decision to terminate Plaintiff's employment, it is direct evidence of an intent to discriminate.

In order for a comment to constitute direct evidence of discrimination it must reflect animus regarding the prohibited category and be made by the decision maker. See Rozskowiak v. Village of Arlington Heights, 15 F.3d 608, 613 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory."). It is undisputed that Knepp, and not Diemer, made the decision to terminate Plaintiff's employ. However, "it may be possible to infer that

8

the decision makers were influenced by [Diemer's] discriminatory feelings" if she "provided input into the employment decision – and the remarks were made around the time of and in reference to that decision." Id. (citations and internal quotation marks omitted); see also Sun v. Board of Trustees of University of Illinois, 473 F.3d 799, 813 (7th Cir. 2007) (stating that "the statements of a person who lacks the final decision-making authority may be probative of intentional discrimination if that individual exercised a significant degree of influence over the contested decision.").

Diemer testified that she recommended to her supervisor, Jeff Castleman, that Plaintiff's employment be terminated. (Shelia Diemer Dep. pp. 32-35). There is no showing in the record, however, the Diemer made this same recommendation to Knepp or that Castleman made a recommendation to Knepp based on Diemer's assessment. There is also no indication in the record that Diemer had a "significant" influence on the decision to terminate Plaintiff's employment. At most, Plaintiff has shown that Diemer recommended to her supervisor that Plaintiff be terminated and that she had a conversation with Knepp regarding Plaintiff's employment. However, an inference from the record is that Diemer, in her discussion with Knepp, indicated that Plaintiff's employment should be terminated. While Diemer may have had some influence over the decision, there is no

9

indication that her discriminatory animus was translated and adopted by Knepp when he decided to terminate Plaintiff's employ.

However, even if Diemer was significantly involved in the decision process, see Lewis v. City of Chicago, 496 F.3d 645, 652 (7th Cir. 2007); Ezell v. Potter, 400 F.3d 1041, 1051 (7th Cir. 2005), her comment does not reflect a gender bias and no reasonable jury would conclude as much. No jury would find that referring to a woman as a "bitch," even a "fucking bitch," in this situation is evidence of a discriminatory intent. The Court finds instructive the Seventh Circuit's assessment of the word:

> It is true that 'bitch' is rarely used of heterosexual males (though some heterosexual male teenagers have taken recently to calling each other "bitch"). But it does not necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or maternal characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect. In its normal usage, it is simply a pejorative term for 'woman.' If Bullock had called Galloway a 'sick woman,' and a similarly situated male coworker a 'sick man,' there would be no ground for an inference of sex discrimination. Galloway v. General Motors Service Parts, 78 F.3d 1164, 1168 (7th Cir. 1996), overruled in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

In the context of this case, the term "fucking bitch" was used once by a Diemer, a woman, in the presence of other women. The phrase also was used by a woman who had a soured relationship

10

with Plaintiff unrelated to their gender and apparently related to a missed promotion. See McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986) ("Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation."). Plaintiff herself acknowledges that the reason that Diemer wanted her fired was because she didn't receive a promotion from Plaintiff's brother. In light of such a belief on the part of Plaintiff herself, no jury would find that Diemer exhibited a gender bias in the phrasing of her statement. As such, this statement is the type of scintilla of evidence that the Seventh Circuit finds insufficient to support a discrimination case. Sanghvi v. St. Catherine's Hospital, Inc., 258 F.3d 570, 574-575 (7th Cir. 2001).

In addition to arguing that there is direct evidence of discrimination, Plaintiff also argues that she can survive summary judgment under the indirect method. Under the indirect method, Plaintiff must establish a *prima facie* case of discrimination: that she is a member of a protected class, that she was performing her job satisfactorily, that she suffered an adverse employment action, and that other, similarly situated, male employees were treated differently. See Farrell v. Butler University, 421 F.3d 609, 613 (7th Cir. 2005). Once Plaintiff makes out a *prima facie* case of discrimination, the burden of

production shifts to Defendant who must articulate a legitimate, non-discriminatory reason for the employment decision.  Koszola v. Board of Education of City of Chicago, 385 F.3d 1104, 1110 (7th Cir. 2004).  Once Defendant has done so, the burden of production switches back to Plaintiff who must show that the proffered reason is merely a pretext for discrimination.  Farrell, 421 F.3d at 613.  "A plaintiff shows that a reason is pretextual directly by persuading the court that a discriminatory reason more likely motivated the defendants or indirectly by showing that the defendants' proffered explanation is unworthy of credence."  Blise v. Antaramian, 409 F.3d 861, 867 (7th Cir. 2005) (internal quotation marks, editing marks, and citation omitted).  A pretextual reason is one that is phony or a lie – a mistake no matter how "ill-considered or foolish," does not suffice.  Id.; U.S. Equal Employment Opportunity Commission v. Target Corp., 460 F.3d 946, 956-957 (7th Cir. 2006) (noting that in order to show pretext, a plaintiff may show that the reasons offered are "factually baseless," "not the employer's actual motivation," "insufficient to motivate the action," or "otherwise pretextual").

There is no question that Plaintiff is a member of a protected class and that she suffered an adverse employment action.  Defendant argues, however, that Plaintiff was not

12

performing to its satisfaction[4] and that Plaintiff cannot present any similarly situated person who was treated differently. Defendant points out that Plaintiff had various performance issues that made her an undesirable employee – she did not stay in her work area, she spent too much time socializing, she took long breaks, and she relied on her co-workers to complete her work.  Plaintiff offers no facts to dispute these contentions; instead she points to a performance review by Sweringen for the period of August 1, 2004 to January 6, 2005.  In this evaluation, Swearingen rated Plaintiff primarily as average and noted a positive comment in the area of "quality" and indicated that while Plaintiff could be "more assertive in showing initiative" she also "cheerfully does any assignment put forth to her."  [Doc. 16-8, p. 1].  The evaluation noted absenteeism problems and that "improvement is expected."  [Id.].  Thus, Plaintiff appears to be arguing that Diemer's evaluation of Plaintiff is beyond belief because it is contradicted by Swearingen's evaluation over the same time period.

---

[4] This prong of the *prima facie* case may be merged with the pretext analysis if there is an argument that Defendant's expectations are a cover for discrimination.  Plaintiff does not make this specific argument – Plaintiff makes no argument that she was performing satisfactorily.  Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir.  1997).  Plaintiff merely argues that the unexcused absences justification is false, not that the other areas of deficiency are false.

However, Plaintiff herself indicated that Diemer's discussions with her regarding her performance occurred "probably" in January or February of 2005. (Jennifer Bressner Dep. p. 54). In addition, Plaintiff offers no argument that Diemer was incorrect in her assessment that Plaintiff exhibited the performance issues highlighted above. Plaintiff further does not argue that requiring an employee to remain in her work area, requiring minimal socializing at work, requiring reasonable breaks, and requiring an employee to complete her own work are unreasonable expectations. See e.g. Squibb v Memorial Medical Center, 497 F.3d 775, 788 (7th Cir. 2007).

Defendant next argues that Plaintiff can present no comparable individuals outside the protected class who were treated differently. Defendant notes that in her deposition, Plaintiff vaguely referred to a "Jim," "Jeremy," and a "Jeff" who had similar performance issues but who were not disciplined. At her deposition, Plaintiff indicated that males who fought, were sleeping on the job, and who were excessively absent were not disciplined. (Bressner Dep. p.132). Plaintiff stated that "Jim" got into a fight at work within a month of her leaving the job. (Bressner Dep. pp. 133-134). Plaintiff believed that he was a full time employee and that he may have reported to Diemer. (Bressner Dep. pp. 134). Plaintiff does not believe that "Jim" was disciplined as a result. (Bressner Dep. 135 –

14

stating that she has "no idea" who would make the decision to discipline him).  Plaintiff also indicated that a "Jeremy" was caught sleeping at work by Diemer a month or so prior to her termination.  (Bressner Dep. pp. 136-137).  Plaintiff stated that she did not know if "Jeremy" was disciplined as a result. (Bressner Dep. p. 140).   Finally Plaintiff indicated that both "Jim" (the same Jim as above) and "Jeff" requested and received a great deal of time off. (Bressner Dep. pp. 141-148).

This is the only evidence, prior to Plaintiff's submission of her response to the Motion for Summary Judgment, that would identify similarly situated individuals.  This evidence is insufficient.  In her deposition, Plaintiff only offers supposition and conjecture as to the status of these employees, the discipline that they received, the supervisors that they reported too, and the nature of the infractions committed. Thus, Plaintiff's deposition generally fails to show that these employees were similarly situated in all "material respects." See Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2007) (noting that while the similarly situated prong is a "flexible, common sense" factor, there must be enough "common factors" to allow for a "meaningful comparison (citation omitted)); Crawford v. Indiana Harbor Belt R. Co., 461 F.3d 844, 845-847 (7th Cir. 2006).

15

Perhaps recognizing this weakness, Plaintiff presents her affidavit, signed on October 26, 2007, a month after her deposition. Plaintiff states that after conducting an "investigation" she now knows the names of the individuals. She states that in the Spring of 2005, James Skinner, a supplemental employee like her and supervised by Diemer got into a fight at work, left early, was tardy, missed days, and received "little to no disciplinary action." (Bressner Aff. ¶ 3a). She goes on to state that Jermy[5] Estes, another supplemental employee supervised by Diemer, fell asleep in 2005, and received "little to no disciplinary action." (Bressner Aff. ¶ 3b). And, finally, she states that Jeff Heiser, another supplemental employee, missed work without permission, and received "little to no disciplinary action" in 2005. (Bressner Aff. ¶ 3(c)). Plaintiff asserts personal knowledge of these facts.

Defendant cries foul arguing that the Affidavit fails to comply with Rule 56(e) as Plaintiff does not have personal knowledge of the facts contained therein and arguing that the affidavit contradicts her deposition. It is black letter law that a party cannot contradict a deposition with a later dated affidavit. <u>Bank of Illinois v. Allied Signal Safety Restraint Systems</u>, 75 F. 3d 1162, 1198-1169 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of

---

[5] Plaintiff's spelling.

Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions."). In Plaintiff's deposition, she invariably stated, when discussing Jim, Jeremy and Jeff, that she did not know the answers to various questions -- not that she did not remember, but that she did not know. With regards to Jim:

> Q. Do you know whether Jim or the other employee were disciplined as a result of this fight?
>
> A. I'm not sure. I know that he's still there. I don't know.
>
> ***
>
> Q. And do you know who made the decision whether to discipline Jim and this other individual or not?
>
> A. I have no idea.
>
> (Bressner Dep. p. 135-136).

With respect to Jeremy:

> Q. Okay. Do you know if anything happened to Jeremy in terms of discipline?
>
> A. No.
>
> Q. So I'm assuming you don't know who would have been responsible for issuing that discipline; is that correct?
>
> A. No.
> Q. Is that right?
>
> A. That's right.
>
> (Bressner Dep. p. 140).

Finally, with respect to Jeff:

17

> Q. And how many times did he take unapproved absences?
>
> A. I don't know.
>
> (Bressner Dep. p. 49).

Thus, when Plaintiff indicated in her affidavit that these men received "little to no discipline," she contradicted her deposition testimony wherein she indicated that she did now know whether Jim or Jeremy received discipline.  Moreover, in her deposition she stated that she didn't know how many unexcused absences Jeff accumulated – how then could she claim in her affidavit that he "missed numerous days from work without obtaining proper authorization for being absent?"  Plaintiff's affidavit is the type of sham evidence that cannot be used to withstand summary judgment.  Plaintiff only offers vague conjecture and supposition as to the nature and circumstances of the infractions of these supposed "similarly situated" male employees.  Even if her affidavit was acceptable, Plaintiff indicates that they were given "little to no discipline." There is a great difference between receiving no discipline and a "little" discipline.  Indeed a reasonable inference is that these men received "little" discipline because they did not commit *all* the infractions that Plaintiff committed.

Finally, even if Plaintiff could establish a *prima facie* case of discrimination, she still cannot show that Defendant's

18

proffered reasons were merely a pretext for discrimination. As noted above, Knepp decided to terminate Plaintiff's employ because of Plaintiff's performance issues and Plaintiff's unexcused absences.

Plaintiff argues that the fact that, ultimately, she had no unexcused absences, is an indication of pretext. Plaintiff misses the mark with this argument. The question is not whether the reason is wrong – the question is whether the employer honestly believed that the reason was right. Logan v. Caterpillar, Inc., 246 F.3d 912, 920 (7th Cir. 2001) ("In order to show pretext, however, it is not enough for the plaintiff to simply assert that the acts for which he was terminated did not occur. He must provide some evidence that the employer did not honestly believe the reasons given for his discharge." (internal editing marks, quotations marks, and citation omitted)). The undisputed evidence reveals that persons other than Diemer believed that Plaintiff had performance issues and excessive absences. Swearingen was responsible for cataloguing Plaintiff's absences and submitting them for entry in the electronic database. The undisputed evidence reveals that these entries were not timely made. The undisputed evidence is that Knepp based his decision, in part, on Plaintiff's unexcused absences after he reviewed the incomplete database. (Knepp Dec. ¶ 6). The undisputed evidence reveals that Knepp believed that

Plaintiff had accumulated 117.04 hours of unexcused absences. (Knepp Dec. ¶ 6) That Knepp later realized the error and settled Plaintiff's union grievance reveals that he made a mistake. (Knepp Dec. ¶ 10)  Furthermore, as noted above, there is no indication that either Diemer or Knepp did not honestly believe that Plaintiff had performance issues.  There is simply no showing that Defendant's reasons for terminating Plaintiff are beyond belief or a lie – at most, Plaintiff only has established that the reasons were mistaken.  There is no showing that Knepp did not honestly believe that Plaintiff had too many unexcused absences and performance issues.  Plaintiff has failed to show that she was discriminated against on account of her gender. This conclusion renders Plaintiff's claim for punitive damages moot.

## CONCLUSION

For the foregoing reasons, Motion for Summary Judgment filed by Defendant on December 21, 2007 [Doc. 15] is GRANTED. Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

CASE TERMINATED.

Entered this  7th  day of February, 2008

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                        United States District Judge